UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

BILLY EDO,

                    Plaintiff,

                                          **MEMORANDUM AND ORDER**

          -against-                       15-CV-5605 (KAM)(VMS)


ANTIKA PIZZERIA ASTORIA, INC.,

                    Defendant.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

          On September 24, 2015, *pro se* plaintiff Billy Edo
("plaintiff" or "Edo") commenced this action against defendant
Antika Pizzeria Astoria, Inc. ("defendant" OR "Antika"[1]),
pursuant to Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in
Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (ECF
No. 1, Complaint.)  After this court granted and denied in part
defendant's motion to dismiss (ECF No. 23, March 29, 2017
Memorandum and Order), plaintiff filed an amended complaint,
continuing to allege violations of Title VII and the ADEA. (ECF
No. 27, Amended Complaint ("Am. Compl.")).

---

[1] According to defendant, Antika Pizzeria Astoria, Inc. is the correct name
and business entity, rather than any references to "Attika" or an LLC.  (ECF
No. 28, Answer to Amended Complaint ("Answer").)

Pending before the court is defendant's motion for summary judgment. For the reasons set forth below, the court grants defendant's motion for summary judgment.

BACKGROUND

## I. Factual Background

The facts in this section are taken from the defendant's Rule 56.1 statement, plaintiff's response to defendant's Rule 56.1 statement, and the parties' declarations and exhibits, and they are considered in the light most favorable to the non-moving party. For the sake of clarity, the court includes allegations from the amended complaint as background information, but does not treat them as undisputed material facts necessary for resolution of this motion.

Plaintiff, a 58-year-old black man, was employed at defendant Antika Pizzeria from May 25, 2014 to July 17, 2014 as a dishwasher. (ECF No. 78-1, Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1 Statement") ¶ 18; ECF No 78-13, Ex. H – Payroll Report at 8.) Defendant maintains that he worked at Antika from May 25, 2014 to July 9, 2014. (ECF No. 81, Plaintiff's Counterstatement to Defendant's Rule 56.1 ("Pl. 56.1 Resp.") at 14-15.)

The plaintiff believes that he is targeted by the New York Police Department ("NYPD") at every job he obtains and that he is terminated from each job because of NYPD targeting. (Def.

56.1 Statement ¶ 12; Pl. 56.1 Resp. at 11.)  Plaintiff believes that this "police conspiracy" is conducted by mostly "Spanish Latino police officers" who go "anywhere plaintiff secures a new job" and "always instigate[] his firing[.]"  (Pl. 56.1 Resp. at 4.)  Plaintiff believes that he saw two NYPD police officers, who are part of this alleged conspiracy, speaking with an Antika employee he refers to as the "Spanish lady manager" ("female manager") a few days after he was hired at Antika.  (Pl. 56.1 Resp. at 15-16.)  Plaintiff saw the female manager[2] point at him during the conversation and understood that the NYPD was going to get him fired like they had at his previous employers.  (*Id.* at 16.)  Plaintiff asserts that after the conversation with the NYPD, the female manager told plaintiff that she was a manager and could fire plaintiff at any time.  (Pl. 56.1 Resp. at 16.)

The day after plaintiff saw the female manager speak with the two officers and was told that she could fire him, plaintiff reported the incident to Theo, Antika's general manager.[3]  (Pl. 56.1 Resp. at 16.)  Theo confirmed that plaintiff should not worry because Theo was the boss.  (*Id.*)

---

[2] Defendant notes that the payroll report from the relevant time period does not mention a female manager or assistant manager.  (Def. 56.1 Statement ¶ 30.  Plaintiff suggests that she may have been kept off the payroll, but that she was the person in charge when the manager listed on the payroll and acknowledged by the defendant, Theo, was not present at work.  (Pl. 56.1 Resp. at 23.)

[3] Defendant nots that Theo is the only manager that appears on the payroll during the relevant time period.  (Def. 56.1 Statement ¶ 30.)

Plaintiff believes that he was subjected to racial discrimination when the female manager told him she could fire him at any time, even though he did not hear her conversation with the NYPD officers. (Def. 56.1 Statement ¶ 21; Pl. 56.1 Resp. at 17.) Plaintiff believes the female manager subsequently conspired with a "Spanish Latino dishwasher" named Ricardo. (Pl. 56.1 Resp. at 4.) This dishwasher physically assaulted plaintiff by hitting him in the chest with heavy bags of flour on Fridays when the pizzeria received deliveries. (*Id.*) The dishwasher would also kick plaintiff and hit him during these incidents. (*Id.*) Ricardo once hit plaintiff and pushed him into a wall in Theo's presence, which prompted Theo to ask why he hit plaintiff. (*Id.* at 4-5.) Plaintiff also states that the female manager and the dishwasher repeatedly told the plaintiff that they did not want black people to work with them in the kitchen and that the plaintiff was too old. (*Id.* at 17.)

In his amended complaint, plaintiff alleges that the employer had a preference for Latino workers, as evidenced by the fact that plaintiff was the only black person in the workplace. (*See* Am. Compl. at 4.) Defendant allegedly fired him in order to replace him with a Latino worker. (*Id.*) The female manager told Theo to fire plaintiff or she would quit her

job because she did not want plaintiff to work with the Latino
workers.  (*Id.* at 8.)

Plaintiff alleges that during the weekly delivery of
supplies to the restaurant, the dishwasher would hit plaintiff
with delivery merchandise in an aggressive manner.  (Am. Compl.
at 12.)  The dishwasher kicked plaintiff, yelled at him using
profanity, and told plaintiff he was too old.  (*Id.* at 12-13.)
Plaintiff reported these incidents to Theo several times, and
Theo said he would do something about it, but never did.  (*Id.*
at 13.)

Plaintiff alleges that on June 10, 2014, the
dishwasher hit him in the face and pushed him, trying to get
plaintiff to react in a way that would get plaintiff fired.
(Am. Compl. at 13.)  Theo asked the dishwasher why he hit the
plaintiff, to which the dishwasher had no response.  (*Id.*)
After Theo left, the dishwasher said the employees did not want
black people in the kitchen, that they only wanted Mexican
people in the kitchen, and that plaintiff was too old.  (*Id.*)
This became part of an every day harassment campaign that
created a hostile working environment.  (*Id.*)

On June 14, 2014, after plaintiff arrived 15 minutes
late to work due to a delayed train, the female manager yelled
at plaintiff in the presence of customers and said she did not
want plaintiff in the restaurant.  (Am. Compl. at 14.)

Plaintiff claims that other workers arrived more than an hour late to their shift, but were not disciplined because they were "Spanish." (*Id.* at 14-15.) Plaintiff also alleges that the manager gave the other workers better work schedules because they are Latino. (*Id.* at 15.)

Plaintiff alleges that on June 15, 2014, the female manager asked him to carry old, odorous garbage bags through the restaurant while customers were eating. (Am. Compl. at 16-17.) The female manager became defensive when plaintiff resisted the request and explained that patrons were still dining. (*Id.*) When plaintiff reported this issue to Theo, Theo said that plaintiff acted appropriately. (*Id.* at 17.) Plaintiff believes that the female manager asked him to take out the garbage bags to create a situation in which she could ask Theo to fire him for misbehavior. (*Id.*)

On June 27, 2014, plaintiff had severe pain in his right hand, right leg, and his waist. (Am. Compl. at 15.) He asked the female manager if the restaurant had a first aid kit or any pain relief medicine. (*Id.*) When she said no, he asked if he could go to a nearby store to buy medicine. (*Id.*) She told him he could not leave and that she would fire him if he left. (*Id.*) After receiving permission from the kitchen chef, plaintiff left to get medicine. (*Id.* at 16.) When Theo next returned to work, plaintiff explained what had occurred, and

Theo told plaintiff and the female manager that she would have to let plaintiff leave to obtain medicine in the future. (*Id.*)

In the evening of June 29, 2014, plaintiff had a dispute with an exterminator who refused to give plaintiff 20 minutes to clear the kitchen and cover exposed foods before he began spraying chemicals. (Am. Compl. at 17-18.) Plaintiff then asked the female manager about the situation and asked for the time needed to clear the kitchen and cover the food. (*Id.* at 18.) The female manager allegedly called the restaurant owner and told him that the plaintiff would not allow the exterminator to spray pesticide. (*Id.*)

Later that night, around 12:30 A.M., when plaintiff was changing in the basement of the restaurant, the female manager allegedly rushed into the basement. (*Id.* at 18.) She then bent over and positioned herself in front of plaintiff in a sexually suggestive manner, which plaintiff believes was an attempt to make it appear as if the plaintiff were raping her. (*Id.* at 18.) Plaintiff believes she did this to get him fired and that plaintiff did this in front of a security camera in the basement. (*Id.*) Plaintiff alleges that this was a "well planned sexual display" that "contributed to a racially hostile work environment because [the manager] used negative racial stereotypes about plaintiff as [a] sexually aggressive black man to set him up to be fired." (*Id.* at 19.)

Plaintiff alleges that the female manager was attempting to fake a rape as retaliation for plaintiff's reporting of her past discrimination. (Am. Compl. at 19.) Plaintiff, however, testified in his deposition that the manager had not removed her work clothing, and that she did not respond when plaintiff accused her of trying to make it appear as if he were raping her. (ECF No. 78-11, Plaintiff's Deposition Transcript ("Tr.") at 61.) Plaintiff also testified that the female manager did not accuse him of rape. (*Id.*)

Plaintiff alleges that on July 9, 2014, Theo fired him as a result of the female manager's and other workers' comments that they did not want a black person working with them, that they only needed Hispanic or Latino workers, that the manager would quit if plaintiff were not fired, and that the plaintiff was too old. (Am. Compl. at 19-20.)

Defendant asserts that plaintiff had arguments with multiple coworkers and was fired for complaining about coworkers. (Def. 56.1 Statement ¶ 19.) The shareholders and officers of Antika were "informed of plaintiff's extremely erratic behavior, tardiness, and constant confrontations with most of his coworkers." (ECF No. 78-2, Declaration of Spiro Kartsonis in Support of Defendant's Motion for Summary Judgment ("Kartsonis Decl.") ¶ 15.) Plaintiff was fired for these reasons alone. (*Id.* ¶ 16.) Plaintiff denies that he had

arguments with multiple coworkers, claiming instead that he argued with the female manager and the dishwasher. (Pl. 56.1 Resp. at 15.) Plaintiff asserts that he was fired for complaining about physical abuse and racial harassment by those two. (*Id.*)

Plaintiff testified at his deposition, however, that he argued with three other workers in the kitchen in addition to the dishwasher. (Tr. 95:18-96:16.) Plaintiff testified that Theo fired him on July 9, 2014. (Tr. 97:19-22.) Plaintiff stated he was fired for complaining, and described, as an example, the incident regarding his dispute with the female manager over taking out the trash. (Tr. 97:23-98:23.) When asked what he was told when he was fired, plaintiff stated that he was "reporting what happened in the premises" and admitted he was complaining about the other employees. (Tr. 100:3-14.)

Plaintiff also believes he was fired from Antika because the NYPD told the female manager to fire him, although he did not hear their conversation. (Def. 56.1 Statement ¶ 20; Pl. 56.1 Resp. at 15.) Defendant asserts that plaintiff merely asserts why he believes he was terminated from his various jobs, rather than what he is told when he is fired, and that the reported remarks are "tainted by his conspiracy agenda." (Def. 56.1 Statement ¶ 29.) Plaintiff admits this, but clarifies that he believes that the female manager's conspiracy with the NYPD

led her to conspire with other Latino coworkers to engage in unlawful race and age discrimination. (Pl. 56.1 Resp. at 22-23.) Plaintiff claims he was terminated under Antika's "employment preference policy for hiring only Spanish Latinos" and that Antika hired a "young Spanish Latino between the age[s] of 23 and 30[]" to replace him. (Pl. 56.1 Resp. at 5.)

Plaintiff was hospitalized at Queens Hospital Center from March 22, 2015 to April 1, 2015. (Def. 56.1 Statement ¶ 7; ECF No. 79-10, Ex. C – Plaintiff's Medical Records ("Pl. Med. Records") at 88.) Plaintiff began receiving treatment at the mental health clinic of Elmhurst Hospital beginning May 2015, and started to receive mental health treatment every four weeks starting on May 20, 2015, relating to a diagnosis of paranoid schizophrenia. (Pl. Med. Records at 4.) He was hospitalized again at Elmhurst Hospital Center from October 25, 2015 through November 9, 2015. (Def. 56.1 Statement ¶ 7; Pl. Med. Records at 2-3.) Defendant asserts that plaintiff was not hospitalized at any other time in 2015, based on testimony elicited during plaintiff's deposition. (Def. 56.1 Statement ¶ 10.) Plaintiff maintains that he was hospitalized at other times, but does not provide any dates or records of additional hospital stays. (Pl. 56.1 Resp. at 9.)

Plaintiff has admitted to being diagnosed as a paranoid schizophrenic with delusions of grandeur. (Def. 56.1

Statement ¶ 15.)  He also admitted during his deposition that he suffers from delusions and hallucinations.  (*Id.* ¶ 16.)

## II.  Procedural History

On August 14, 2014, plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging race, age, and national origin discrimination against the New York Police Department and a number of his past employers, including Antika.  (Def. 56.1 Statement ¶ 2.)  On June 2, 2015, the EEOC issued a Dismissal and Notice of Rights, which stated that the EEOC was unable to conclude that there was a violation of law and notified plaintiff of his right to sue in federal court within ninety days.  (Def. 56.1 Statement ¶ 3; ECF No. 78-8, EEOC Dismissal and Notice of Rights ("EEOC Notice").)  Plaintiff subsequently commenced this action by filing a complaint on September 24, 2015, one hundred and fourteen days after the EEOC issued the Notice of Right to Sue Letter.

Defendant brought a motion to dismiss on the grounds that the plaintiff's claims were time-barred and that the complaint failed to state claim pursuant to Fed. R. Civ. P. 12(b)(6), which the court granted in part and denied in part. (ECF No. 23, March 29, 2017 Memorandum & Order.)  The court denied the motion to dismiss as to plaintiff's race and age discrimination claims, race-based and age-based hostile work environment claims, and retaliations claims.  (*Id.*)  The court

granted plaintiff's motion as to the sex-based hostile work environment claim, but granted plaintiff leave to amend to allege facts, if available, supporting a sex-based hostile work environment claim. (*Id.*)

The court also denied the motion on defendant's statute of limitations argument. (*Id.*) Although the ninety-day limitations period for filing after receipt of an EEOC notice is strict, the court declined to deny the motion on those grounds because the Second Circuit has recognized that the issue of whether equitable tolling should apply based on a plaintiff's mental capacity is one that should be analyzed in the context of summary judgment. (*Id.* at 10-11.)

Plaintiff subsequently filed an amended complaint, alleging racial discrimination, age discrimination, retaliation, and hostile work environment based on race. (Am. Compl. at 2.) Defendant has moved for summary judgment.

## LEGAL STANDARD

### I.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), "and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

If the moving party can show that "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Peterson v. Regina*, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To defeat a motion for summary judgment, the non-moving party must identify probative, admissible evidence from which a reasonable factfinder could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257 (1986). It "requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific

facts showing that there is a genuine issue for trial." 477
U.S. at 261 n.2 (citations omitted). "Only disputes over facts
that might affect the outcome of the suit under the governing
law will properly preclude the entry of summary judgment. . . .
[I]t is the substantive law's identification of which facts are
critical and which facts are irrelevant that governs." 477 U.S.
at 248. If, as to the issue on which summary judgment is
sought, there is any evidence in the record from any source from
which a reasonable inference could be drawn in favor of the
nonmoving party, summary judgment is improper. *Chambers v. TRM
Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citations
omitted).

The Second Circuit has "repeatedly expressed the need
for caution about granting summary judgment to an employer in a
discrimination case where . . . the merits turn on a dispute as
to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130,
137 (2d Cir. 2008). "Where an employer has acted with
discriminatory intent, direct evidence of that intent will only
rarely be available, so that 'affidavits and depositions must be
carefully scrutinized for circumstantial proof which, if
believed, would show discrimination.'" *Id.* (citing *Gallo v.
Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224
(2d Cir. 1994)). But "[e]ven in the discrimination context,
however, a plaintiff must provide more than conclusory

14

allegations to resist a motion for summary judgment." *Id.*
(citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

**DISCUSSION**

## I.   Time-Barred Title VII and ADEA Discrimination Claims

"In order to be timely, a claim under Title VII or the
ADEA must be filed within 90 days of the claimant's receipt of
a right-to-sue letter." *Sherlock v. Montefiore Med. Ctr.*, 84
F.3d 522, 525 (2d Cir. 1996). "While the 90-day rule is not a
jurisdictional predicate, in the absence of a recognized
equitable consideration, the court cannot extend the limitations
period by even one day." *Johnson v. Al Tech Specialties Steel
Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citation and internal
quotation marks omitted). *See also Doe v. Menefee*, 391 F.3d
147, 175 (2d Cir. 2004) ("[*P*]*ro se* status does not in itself
constitute an extraordinary circumstance meriting tolling[.]").
"[E]quitable tolling may be appropriate where the plaintiff's
failure to comply with the statute of limitations is
attributable to the plaintiff's medical condition." *Brown v.
Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002).
"The issue of whether a mental disability warrants equitable
tolling of a filing deadline requires a 'highly case-specific'
inquiry." *Id.* (citing *Boos v. Runyon*, 201 F.3d 178, 185 (2d
Cir. 2000).)

"[A] conclusory and vague claim, without a particularized description of how [a] condition adversely affected [plaintiff's] capacity to function generally or in relationship to the pursuit of [his] rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). The description should "not [be] limited to simple descriptions of the extent of [the] alleged disability." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 513 (2d Cir. 2002). Courts in the Second Circuit "have generally held that a petitioner must demonstrate some form of incapacitation due to the mental illness that affected his ability to act with due diligence during the time period at issue." *Victorial v. Burge*, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007). "Where a plaintiff suffers from a chronic mental illness, he must show that he was *actually impaired during the relevant time period.*" *Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 229 (S.D.N.Y. 2011) (citation omitted) (emphasis in original).

Defendant argues that plaintiff is not entitled to equitable tolling for his failure to file his complaint within the 90-day window after issuance of the EEOC notice. (ECF No. 78-5, Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") at 3-5.) Defendant argues that plaintiff did not produce evidence of or testify to any

hospitalization that would have prevented him from timely filing, and that plaintiff has not provided any documentary evidence or expert testimony explaining why he would have otherwise been unable to file between June 2, 2015 and August 31, 2015. (*Id.* at 4-5.)

Plaintiff argues that his mental illness prevented him from meeting the 90-day deadline. (ECF No. 79-4, Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ("Opp.") at 22.) Plaintiff states that he suffered from paranoid schizophrenia and related conditions of anxiety and depression when he was fired. (*Id.* at 25.) Plaintiff claims that the stress of being fired intensified his mental illnesses and describes his symptoms: he was unable to leave his bed or eat, he wanted to hurt himself, and he was unable to focus or concentrate. (*Id.* at 27.) Plaintiff knew he needed help twice and called the police, which resulted in his hospitalization for psychiatric treatment.[4] (*Id.* at 27.)

---

[4] Plaintiff claims, without evidentiary support, that he was hospitalized four times "during this period of time that resulted in his equitable tolling to comply with" the 90-day filing deadline. (Pl. 56.1 Resp. at 7. *See also id.* at 9; Opp. at 22, 25, 27.) He denies defendant's assertion that he was not hospitalized more than two times during 2015. (Pl. 56.1 Resp. at 9.) However, plaintiff does not define the relevant time period for the alleged four hospital stays, identify the dates of the two additional hospital stays beyond the March 22 to April 1 and October 25 to November 9, 2015 stays, or provide records regarding these stays. Moreover, the plaintiff's narrative description of his health from the time of firing through 2015 contains only two hospital stays. (Opp. at 27-28.)

Plaintiff filed a charge with the EEOC on August 14, 2014. Plaintiff argues that when he received his EEOC notice on June 2, 2015, two months after he was first released from the hospital, he was "very much suffering from [his] mental illness and taking medication." (*Id.* at 27.) He asserts that his "inability to focus or concentrate rendered [him] incapable of drafting [his] complaint by the deadline required." (*Id.* at 27-28.) He drafted the complaint as soon as his "mental state allowed [him] to sit down and write" it. (*Id.* at 28.) Plaintiff also notes that within a few weeks of drafting the complaint, he was back in the hospital seeking treatment. (*Id.*) Plaintiff maintains that he now receives "regular treatment and tak[es] medication", which has allowed him to focus his attention on this lawsuit. (*Id.*)

Plaintiff has not demonstrated that he should receive equitable tolling. Although plaintiff describes the symptoms of his illnesses, including his inability to concentrate, plaintiff explains that he suffered from his illnesses at the time of his firing, which means that he timely filed his EEOC charge while suffering from his illnesses. Moreover, although plaintiff establishes that there were two time periods during which he was hospitalized, he does not sufficiently explain how the court should consider the time between those hospital stays. Plaintiff asserts that he was not well enough to file his

complaint timely, but that he was well enough to file it late, before ultimately becoming unwell again weeks later.  Plaintiff does not provide any medical records establishing there were serious fluctuations in his mental health during the period between his two hospital stays.  Plaintiff explains that he is able to proceed in this action now because he receives regular treatment and takes medication, but he admits that he was on medication after his first hospital stay (Opp. at 27), and began receiving regular treatment in May 2015 (Pl. Med. Records at 4). Plaintiff is not entitled to equitable tolling and his claims are time-barred.

Although the court does not find that the statute of limitations should be equitably tolled, plaintiff also would not prevail on the merits.  Under the Supreme Court's *McDonnell Douglas* framework, "a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) [he] belonged to a protected class, (2) was qualified for the position [he] held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent." *Fanelli v. New York*, 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)).  "This burden is minimal and does not require specific evidence of discrimination." *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 514 (E.D.N.Y. 2009)

(citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citation and internal quotation marks omitted).

"If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for [the adverse act].'" *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 375 (E.D.N.Y. 2013) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009)), *aff'd,* 578 F. App'x 34 (2d Cir. 2014). "The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle." *Id.*

"Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of 'discrimination *vel non*.'" *Fanelli v. New York*, 200 F. Supp. 3d 363, 371 (E.D.N.Y. 2016) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are 'conclusory and unsupported by evidence of any weight.'" *Id.* (citing *Smith v. Am. Ex. Co.*, 853 F.2d 151,

20

154-55 (2d Cir. 1988)).  *See also Chan v. Donahoe*, 63 F. Supp. 3d 271, 297 (E.D.N.Y. 2014) (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 84) (2d Cir. 2013)) ("In order to successfully rebut an employer's purported non-discriminatory reason for the employment action, the plaintiff must establish pretext."). "Thus, when the district court considers whether the evidence can support a verdict of discrimination on a motion for summary judgment, it 'must analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination.'" *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (citing *Fisher v. Vassar College*, 114 F.3d 1332, 1347 (2d Cir. 1997)).

Although the court should examine all the circumstances in each case, "some factors strongly suggest that invidious discrimination was unlikely." *Id.* "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire . . . especially [] when the firing has occurred only a short time after the hiring." *Id.  See also Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (applying the same actor rationale where plaintiff was fired by someone who had hired him three years earlier).  "Statements by non-

decisionmakers are not sufficient to show pretext." *Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 388 (S.D.N.Y. 2009).

For the purposes of the instant motion, and reviewing the evidence on the merits, the court assumes, without deciding, that the plaintiff has established a *prima facie* case of discrimination as a black man over forty who was qualified to do his job as a dishwasher at Antika Pizzeria and who was fired allegedly, because other employees did not want a black man working with them. Some of the incidents plaintiff describes to support this claim, however, such as the alleged conversation he had with the manager regarding her ability to fire plaintiff, do not contain any descriptors alluding to race; plaintiff has interpreted them to be racially motivated due to a conspiracy he believes is operating against him. And although plaintiff has alleged that the female manager and dishwasher told him they did not want black people working there, the defendant has offered a legitimate reason for plaintiff's termination: plaintiff's arguments with his co-workers and continuous complaints about them.

One of the shareholders averred that the shareholders and officers of the business "were timely informed of plaintiff's extremely erratic behavior, tardiness, and constant confrontation with most of his co-workers" and that plaintiff

was terminated for those reasons alone. (Kartsonis Decl. ¶¶ 15-16.) Plaintiff not only presents no evidence to raise a dispute as to defendant's reason for terminating his employment, but he testified during his deposition that he was told that he was terminated because he was "reporting what happened in the work premises" and his "behavior [was] bad." (Tr. 100.) To be clear, it would be unlawful for defendant to have fired plaintiff for reporting racial discrimination. But plaintiff conceded that he engaged in arguments with his coworkers, including employees other than the manager and the dishwasher who allegedly made discriminatory comments. (Tr. 95-96.)

Plaintiff has not established that defendant's reason is pretextual. Plaintiff relies on his initial allegations regarding racial comments by the female manager and the dishwasher, neither of whom had or exercised firing power. Plaintiff offers no evidence that they were involved in the decisionmaking process for his termination, conclusorily stating that their opinions were considered.

Furthermore, plaintiff himself testified that his complaints were about how the other workers performed or failed to perform their jobs. Plaintiff described his dispute with the female manager about the appropriate time for the trash to be taken out as an example of one of his complaints. (Tr. 97-98.) Plaintiff alleged that he complained to Theo that the female

manager did not allow him to leave his shift to go buy medicine. (Am. Compl. at 16.)  And although the female manager was the one who reported the dispute, plaintiff also argued with her regarding the exterminator.  (Am. Compl. at 17-18.)  The incidents cited by plaintiff refer to disagreements about how the restaurant should operate and do not provide evidence that plaintiff was terminated because of discrimination.

Plaintiff alleges that Theo told plaintiff not to worry about any threats of termination from the manager because he was the boss.  (Am. Compl. at 11-12.)  Theo, the person who hired plaintiff, was the one who ultimately terminated plaintiff's employment, and he did so within two months of hiring plaintiff.  Based on the evidence before the court, including plaintiff's own testimony, plaintiff could not prevail on his Title VII race discrimination claim.

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), also applies to ADEA claims.  *Delaney v. Bank of America Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014).  "To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Terry v.*

*Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003) (citation and internal quotation marks omitted).

Plaintiff alleges that he was fired so that a younger dishwasher, someone from outside his protected class, could be hired. "Though sufficient for the *de minimis* standard of the *prima facie* stage, this, without more, is insufficient to show support a finding by a jury that the [d]efendant's explanation for the termination is false. *Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cty.*, 803 F. Supp. 2d 168, 182 (E.D.N.Y. 2011), *aff'd,* 469 F. App'x 66 (2d Cir. 2012). "As an initial matter, plaintiff must come forward with more than just his age to prove discrimination." *Testa v. CareFusion*, 305 F. Supp. 3d 423, 435 (E.D.N.Y. 2018). "Specifically, with respect to ADEA claims, establishing pretext requires proof that the plaintiff's age was 'a *but-for cause*' of, and not merely one of the contributing motivations behind, the defendants' adverse employment decision, such that the decision 'would not have occurred without it.'" *Hall v. N. Bellmore Sch. Dist.*, 55 F. Supp. 3d 286, 295–96 (E.D.N.Y. 2014) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

As with plaintiff's race discrimination claim, a jury will be unable to find for plaintiff on his ADEA claim because the evidence establishes that he was terminated by the same person who hired him and has not produced evidence demonstrating

25

that Theo fired him because of his age.  Plaintiff's assertion
that his age was the sole cause for his termination is
undermined by plaintiff's allegation that the co-worker who
allegedly stated he was too old was both employed in the same
position (dishwasher) and a member of the same protected class.
(*See* Am. Compl. at 5 (alleging that the dishwasher was between
45 to 50 years old).)  The dishwasher, plaintiff's peer, was not
a decisionmaker and his comments cannot be used to establish
pretext.  Plaintiff also does not allege that the dishwasher was
replaced by someone younger.

For the reasons stated above, the court grants
defendant summary judgment on plaintiff's claims of racial
discrimination in violation of Title VII and age discrimination
in violation of the ADEA.

## II.   Hostile Work Environment & Retaliation

Defendant argues that plaintiff cannot bring hostile
work environment and retaliation claims in this federal court
action because these arguments were not raised in plaintiff's
EEOC charge.  (Def. Mem. at 9-10.)

"Before an individual may bring a Title VII suit in
federal court, the claims forming the basis of such a suit must
first be presented in a complaint to the EEOC or the equivalent
state agency."  *Williams v. New York City Hous. Auth.*, 458 F.3d
67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5).  Although

exhaustion is usually an essential requirement of a Title VII claim, if a claim was not raised in the EEOC charge, it may be brought in federal court if it is reasonably related to the claims that were presented in the EEOC charge. *Id.* at 70. "A claim is reasonably related to the filed claim if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citation and internal quotation marks omitted). "In this inquiry, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Williams*, 458 F.3d at 70 (citing *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Id.* (citing *Deravin*, 335 F.3d at 202).

"To present a hostile work environment claim to the EEOC, a plaintiff must have alleged facts sufficient to suggest a pervasive, abusive environment upon which a rational trier of fact could find that he was subjected to a hostile work environment due to his [membership in a protected class]." *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 390 (E.D.N.Y. 2009) (citation and internal quotation marks omitted).

Allegations that merely "resemble the kind of job-related complaints that, while suggesting discrimination, do not sufficiently allege the 'hostile' part of a hostile work environment claim" will not suffice.  *See id.*

  To ultimately prevail, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic."  *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  To determine whether a work environment is sufficiently hostile, "courts consider the totality of the circumstances, including such factors as '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.'"  *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 152 (E.D.N.Y. 2002) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 437 (2d Cir. 2002)).  "[U]nder the law, an unpleasant work environment does not amount to a hostile one." *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 214 (E.D.N.Y. 2018).

  The court agrees with defendant's argument that plaintiff's hostile work environment claim was not asserted in his EEOC charge and is not reasonably related to any claims

asserted before the EEOC.  The EEOC charge describes isolated incidents occurring on four different days.  (ECF No. 78-7, EEOC Charge, at 17-19.)  The descriptions of most of these events do not suggest that someone employed by Antika took action against plaintiff because of an unlawful motive in violation of Title VII or the ADEA.  Plaintiff states that during one incident, a dishwasher said he "[was] too old."  (EEOC Charge at 19.)  Other than this incident, the other incidents described in the plaintiff's EEOC charge generally appear to be job-related complaints regarding plaintiff's view of how the pizzeria should have operated.

The only events that plaintiff alleges occurred with any frequency were physical altercations he had with one co-worker during Friday deliveries, but the EEOC charge did not assert a hostile work environment claim.  (EEOC Charge at 17.)  Plaintiff does not include any factual allegations explicitly stating, much less suggesting, that those altercations occurred because plaintiff was a member of a protected group, a necessary finding for a hostile work environment charge.  The court is also reluctant to conclude that allegations of physical abuse by a co-worker would have given the EEOC adequate notice to investigate for a hostile working environment.  Although referring to a singular incident, the Second Circuit has concluded that a plaintiff's serious physical assault, "while

understandably upsetting, was not so severe as to alter materially the plaintiff's working conditions—unlike, for example, a rape[.]" *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008). In *Mathirampuzha*, an employee "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye[.]" *Id.* at 73.

For these reasons, plaintiff's hostile working environment claim is not reasonably related to the claims in his EEOC charge and is barred.[5] Even if the court found that the hostile working environment claim was reasonably related, the claim still could not proceed because plaintiff did not timely file his federal court complaint and is not entitled to equitable tolling.

Plaintiff's retaliation claim under the ADEA can be said to be reasonably related to his EEOC charge, however. "[W]hen the EEOC charge alleges facts from which a reader can infer a link between protected activity—for example, a complaint about perceived discriminatory treatment—and a subsequent

---

[5] Plaintiff did not allege additional facts regarding his hostile work environment based on sexual harassment claim, so that claim is not revived. (*See* ECF No. 23, March 29, 2017 Memorandum and Order at 15-17, 23 (dismissing plaintiff's sexual harassment claim without prejudice to renew).) Although plaintiff removed the heading describing the basement encounter with the manager as "sexual harassment" (*see* ECF No. 1, Complaint at 31), plaintiff retained a description of the incident, describing it as promoting a racial stereotype of a sexually aggressive black man (ECF No. 27, Am. Compl. at 19.) The plaintiff did not, however, allege any additional facts demonstrating that this incident involved race or that the manager made any comments relating to race during it.

adverse employment action, a retaliation claim asserted in a
subsequent lawsuit will be 'reasonably related' to the EEOC
charge." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430,
438 (E.D.N.Y. 2010).  Plaintiff's EEOC charge alleges that he
"reported [his coworkers'] misconduct practice under harassment
and age discrimination context," as well as that he was
terminated.  Plaintiff alleged enough for the EEOC to consider
that plaintiff may have been terminated for reporting age
discrimination.[6]

Even so, plaintiff still cannot prevail on a
retaliation claim.  As stated above, plaintiff's age
discrimination claim is time-barred due to his failure to file
his complaint within the 90-day window.

"The ADEA prohibits discrimination in retaliation for
an employee's opposition to discriminatory practices." *Preuss
v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 195-96 (S.D.N.Y.
2013).  "Claims of retaliation for engaging in conduct protected
by . . . the ADEA . . . are examined under the *McDonnell
Douglas* burden-shifting test." *Campbell v. New York City
Transit Auth.*, 93 F. Supp. 3d 148, 174 (E.D.N.Y.
2015), *aff'd,* 662 F. App'x 57 (2d Cir. 2016).  "To
survive summary judgment on a claim of retaliation, a plaintiff

_____

[6] The EEOC charge does not allege facts supporting an inference that plaintiff
reported racial discrimination to the defendant and was punished for it.  A
retaliation claim on that ground is barred.

must show that retaliatory intent was the 'but-for' cause of any wrongful actions—that is, 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 36 (E.D.N.Y. 2015) (citing *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

As discussed above, defendant has articulated a lawful, non-retaliatory basis for plaintiff's termination. Plaintiff cannot establish that retaliation was the but-for cause of defendant's decision to terminate plaintiff.

### CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment. The Clerk of Court is respectfully directed to enter judgment in favor of the defendant, serve a copy of this Memorandum and Order and the judgment on the *pro se* plaintiff, note service on the docket, and close this case.

**SO ORDERED.**

Dated:     September 23, 2019
           Brooklyn, New York

                                          /s/
_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York